UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JEFF POFF,

                Plaintiff,

v.                                      Case No. 25-cv-112-pp

MATTHEW SCULLION, *et al.*,

                Defendants.

**ORDER GRANTING PLAINTIFF'S FIRST MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING AS UNNECESSARY PLAINTIFF'S SECOND MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 9) AND SCREENING AMENDED COMPLAINT (DKT. NO. 8) UNDER 28 U.S.C. §1915A**

      Plaintiff Jeff Poff, who is incarcerated at Waupun Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants had violated his civil rights. On February 13, 2025, the court received the plaintiff's amended complaint. Dkt. No. 8. Under Federal Rule of Civil Procedure 15, "[a] party may amend its pleading once as a matter of course" within twenty-one days of service of the complaint or of a responsive pleading. Fed. R. Civ. P. 15(a)(1). Because the court has not screened the original complaint or ordered service on any defendant, this decision resolves the plaintiff's motions for leave to proceed without prepaying the filing fee, dkt. nos. 2, 9, and screens his amended complaint, dkt. no. 8.

**I.    Motions for Leave to Proceed without Prepaying the Filing Fee (Dkt. Nos. 2, 9)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without

prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On February 11, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $1.60. Dkt. No. 7. The court received that fee on April 11, 2025. The court will grant the plaintiff's first motion for leave to proceed without prepaying the filing fee (Dkt. No. 2) and will deny his second motion for leave to proceed without prepaying the filing fee (Dkt. No. 9) as unnecessary. The court will require the plaintiff to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II.     Screening the Amended Complaint

### A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that

2

Case 2:25-cv-00112-PP    Filed 07/10/25    Page 2 of 19    Document 11

the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The amended complaint concerns events that allegedly occurred while the plaintiff was incarcerated at the Wisconsin Secure Program Facility (WSPF). Dkt. No. 8 at ¶14. It names as defendants Lieutenant Matthew Scullion, Warden Gary Boughton, Security Director Jacob Cirian, Correctional Officer Belz, Dr. Justin Ribalt, Health Services Unit (HSU) Manager Sheryl Kinyon, Nurse Katie Kinyon, former HSU Manager Jamie Adams, current HSU Manager Nicole Parr, Dr. Carrie Kramer at Gunderson Boscobel Hospital, Gundersen Boscobel Hospital and institutional complaint examiners E. Ray, J. Payne and R. Boyer. Id. at ¶¶3–13. The plaintiff sues all these individuals in their

individual capacities only and sues Gundersen Boscobel Hospital in its official capacity. Id.

The plaintiff alleges that on December 2, 2022, Scullion and Belz came to his cell to escort him off grounds for a medical appointment at Gundersen Boscobel. Id. at ¶14. Scullion ordered the plaintiff to remove his hat, which the plaintiff says was a Muslim "Kuffi" that he was allowed to have. Id. at ¶15. The plaintiff says that Scullion and Belz's body cameras were not recording, which violates institutional policy. Id. at ¶16. He asked the defendants why their body cameras were not recording, and Scullion allegedly threatened to cancel the plaintiff's medical appointment "if he continued to act 'disruptive.'" Id. at ¶17.

The plaintiff came out of his cell, and Scullion conducted a pat down search. Id. at ¶18. The plaintiff says that when Scullion searched the front of his body, the plaintiff felt "some sort of metal object" hit his testicles, which caused him to "scream out in pain" and ask Scullion why he had done that to him. Id. (emphasis omitted). The plaintiff says that Belz immediately responded, "That's what you [get] n[*****] for filing lawsuits against us." Id. at ¶19. The plaintiff says this was a reference to an earlier lawsuit he had filed. Id. He says that as the officers escorted him out of the unit, he saw about a half-dozen other officers watching a monitor that showed Scullion's assault and laughing at the plaintiff as he walked by in pain. Id. at ¶20.

When the plaintiff arrived at Gundersen Boscobel, Dr. Riley (not a defendant) examined the plaintiff's knee and recommended reconstructive surgery to repair his ACL and a no-kneel restriction at WSPF to prevent further damage. Id. at ¶21. The plaintiff says that Scullion questioned whether the restriction was necessary, and Riley insisted that it was. Id. He says that Scullion nonetheless responded, "We'll see about that." Id. Back at WSPF,

Scullion spoke with Sheryl Kinyon, who then told the plaintiff that she would inform Dr. Ribalt about the recommendation for the no-kneel restriction but could not promise that Ribalt would provide him that restriction. Id. at ¶¶22–23.

The plaintiff returned to his cell and pressed the medical emergency button to speak with Unit Manager Brown (not a listed defendant) to report Scullion's assault during the search under the Prison Rape Elimination Act (PREA). Id. at ¶24. The plaintiff said that an officer told him the unit manager was not available, so he wrote to Brown and defendants Cirian and Warden Boughton about the incident. Id. He says that Cirian responded, denied the allegations and did not allow the plaintiff to place a "PREA phone call." Id.

The plaintiff says that from December 2022 through March 2023, he submitted numerous medical request slips for pain in his testicles. Id. at ¶25. He says that medical staff determined that he had a hernia "that grew the size of a 'baseball.'" Id. The plaintiff also requested treatment for injuries to his lower back and right knee. Id. He alleges that on January 10, 2023, he had an appointment with Ribalt and Sheryl Kinyon. Id. at ¶26. He requested various conservative treatments and surgery to repair his injured ACL and back injury, but the defendants provided him no treatment. Id. On January 18, 2023, a non-defendant nurse conducted a test on the plaintiff's testicles that showed that he had a large inguinal hernia. Id. at ¶27. On February 28, 2023, Dr. Kramer saw the plaintiff at Gundersen Boscobel, scheduled him for surgery to repair his hernia and prescribed him Tramadol for pain. Id. at ¶28. The same day, HSU Manager Parr sent the request for Tramadol to Ribalt, but the plaintiff says that Parr and Ribalt denied him Tramadol. Id. The plaintiff says

that on March 1, 2023, he again saw Parr about his hernia, low back and knee, but that she rendered no medical treatment. Id. at ¶29.

The plaintiff alleges that in late March 2023, Kramer performed his hernia mesh surgery and implanted a B.A.R.D. mesh. Id. at ¶30. He says that this mesh is on the FDA's "defective list of implant[s]" because it "can cause shrinkage, contraction, degradation, and fragmentation when subjected to prolonged tension inside the body." Id. The plaintiff says that Kramer also cut a nerve that "was in the way" of repairing the plaintiff's hernia. Id. He alleges that as a result, he has permanent loss of sensitivity in his "private (parts) [*sic*] during intimacy." Id. He says that the mesh causes stabbing pain, pulling and tearing and might "ultimately lead to his (death) [*sic*] if a severe blockage of his intestines occurres [*sic*]." Id.

The plaintiff claims that Scullion and Belz plotted to retaliate against him by turning off their body cameras, sexually assaulting him, causing his injury to develop into a hernia and forcing him to require corrective surgery in violation of his rights under the First and Eighth Amendments. Id. at ¶32. He claims that Brown, Cirian and Boughton failed to investigate his PREA complaint in violation of his rights under the Eighth and Fourteenth Amendments. Id. at ¶33. The plaintiff claims that Sheryl Kinyon, Dr. Ribalt and Parr ignored his doctor's recommendations and failed to provide him the no-kneel restriction and surgery to repair his ACL, Tramadol for his testicle pain and the conservative treatments or surgery for his lower back injury, in violation of the Eighth Amendment. Id. at ¶34. He claims that Dr. Kramer and Gundersen Boscobel violated his rights under the Eighth Amendment by implanting the B.A.R.D. hernia mesh despite being aware that it was on the FDA's defective list, leaving the mesh inside him and cutting the nerve in his

groin area that caused the loss of sensitivity. Id. at ¶35. Finally, the plaintiff claims that defendants Boyer, Ray and Payne failed to investigate his claims in his grievances in violation of the Eighth Amendment. Id. at ¶36.

The plaintiff seeks compensatory and punitive damages; a permanent injunction against Dr. Kramer and Gundersen Boscobel ordering them to remove the B.A.R.D. mesh; and an injunction ordering the Department of Corrections to send the plaintiff to a back specialist for surgery and to provide him pain medication and an extra mattress "untill [*sic*] this injury is repaired, and all claims are resolved." Id. at p.12.

C.   Analysis

The amended complaint contains allegations against several officials concerning events from December 2022 through March 2023. The plaintiff first alleges that Lieutenant Scullion sexually assaulted him during a search. The court analyzes these allegations under the Eighth Amendment, which prohibits cruel and unusual punishments. See generally Wilson v. Seiter, 501 U.S. 294 (1991). "[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). An Eighth Amendment claim consists of an objective and subjective component. Farmer v. Brennan, 511 U.S. 825, 834 (1994). In the context of a claim of excessive force, the plaintiff must allege both that (1) "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation," and (2) "'the officials act[ed] with a sufficiently culpable state of mind.'" Hudson, 503 U.S. at 8 (quoting Wilson, 501 U.S. at 298, 303).

The court finds that the plaintiff's allegations that Scullion assaulted him during a search by hitting him in the testicles satisfies both components of an

Eighth Amendment claim. The Eighth Amendment clearly prohibits sexual abuse in the prison context, which serves no penological purpose. See Rangel v. Lorum, Case No. 19-C-451, 2019 WL 5424694, at *2 (E.D. Wis. Oct. 23, 2019) (citing Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th Cir. 2000)).[1] And the plaintiff alleges that the assault left him in significant pain and led to him developing a hernia that required surgical intervention. The plaintiff may proceed on this claim against Scullion.

The court also will allow the plaintiff to proceed on an Eighth Amendment claim against Belz. Although the plaintiff does not allege that Belz assaulted him, he alleges that Belz planned the assault with Scullion, knew it would happen and failed to intervene and stop it. Prison officials must intervene to prevent constitutional violations that they know about and have a realistic opportunity to prevent. Gill v. City of Milwaukee, 850 F.3d 335, 342 (7th Cir. 2017). Because the plaintiff says Belz failed to prevent the assault despite having an opportunity to, he may proceed against Belz under the Eighth Amendment.

The court will not allow the plaintiff to proceed on a claim that Scullion and Belz planned to cause his injury knowing it would lead to a hernia, medical complications and inadequate treatment. It is not plausible that these officers could foresee such drastic and extreme consequences from a single assault or that they planned to assault the plaintiff knowing that the assault would lead to inadequate medical treatment months later. Although the officers can be held liable for the assault and the harm it caused, they cannot be held liable for the inadequate medical treatment the plaintiff says he later received

---

[1] It appears that the plaintiff perceived this as a sexual assault, because he asked to make a report under the PREA One could also view the allegations as alleging excessive force, the use of which also could constitute a violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

for his injuries. See Stankowski v. Carr, Case No. 23-2458, 2024 WL 548035, at *2 (7th Cir. Feb. 12, 2024) (citing Taylor v. Ways, 999 F.3d 478, 493 (7th Cir. 2021)) ("To be liable under § 1983, a defendant must be personally responsible for the violation of a constitutional right.").

The plaintiff alleges that Scullion and Belz violated DOC policy when they failed to activate their body cameras before taking him out of his cell, searching him and assaulting him. But §1983 protects against constitutional violations; it does not protect against violations of prison regulations or policies. See Estate of Simpson v. Gorbett, 863 F.3d 740, 746 (7th Cir. 2017); Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir. 2003). The plaintiff may not proceed on a claim related to the officers' alleged violations of DOC policy.

The plaintiff says that after the assault, Belz told him it was because the plaintiff had filed an earlier lawsuit against prison officials. The court analyzes these allegations under the First Amendment. See Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009). To state a claim of retaliation, the plaintiff must allege that "he engaged in a protected activity," "he suffered a deprivation likely to prevent future protected activity" and "his protected activity was a motivating factor in the defendants' decision to retaliate." Daugherty v. Page, 906 F.3d 606, 610 (7th Cir. 2018) (citing Perez, 792 F.3d at 783).

Filing a previous lawsuit is protected activity. See Harris v. Walls, 604 F. App'x 518, 521 (7th Cir. 2015) (citing Hasan v. U.S. Dep't of Labor, 400 F.3d 1001, 1005 (7th Cir. 2005)). And the plaintiff says Belz told him the sexual assault occurred because the plaintiff filed a past lawsuit. Scullion's actions—sexually assaulting a person—would "likely deter a person of ordinary firmness from continuing to engage in protected activity." Douglas v. Reeves, 964 F.3d 643, 646 (7th Cir. 2020) (quotation omitted). This is an objective standard, so

the fact that the plaintiff reported Scullion's actions and continued to file lawsuits "does not undermine his claim." Id. (citing Holleman v. Zatecky, 951 F.3d 873, 880 (7th Cir. 2020)). Although it is possible that some incarcerated persons who, after being assaulted and told it was because they filed a past lawsuit, might be *more likely* to file future lawsuits complaining about the actions of prison staff, at this early stage in the proceeding, the court concludes that being subjected to a painful sexual assault would likely deter a person of ordinary firmness from filing future lawsuits. The court will allow the plaintiff to proceed on a First Amendment retaliation claim against Belz.

The plaintiff may not proceed against Belz related to Belz's alleged comments after the assault. The plaintiff says that Belz harassed him and called him a racial slur. Other than in exceptional circumstances, verbal abuse or unprofessional comments from prison officials does not constitute a violation of the Eight Amendment. See Lisle v. Welborn, 933 F.3d 705, 719 (7th Cir. 2019) (citing Beal v. Foster, 803 F.3d 356, 357–58 (7th Cir. 2015)) (explaining that prison staff's use of even "[r]epugnant words . . . will seldom rise to an Eighth Amendment violation" because "[r]elationships between prisoners and prison staff are not always marked by genteel language and good manners"). Although Belz's alleged language was unacceptable and unprofessional, it did not violate the plaintiff's Eighth Amendment rights.

The plaintiff next alleges that Unit Manager Brown (who is not a listed defendant), Security Director Cirian and Warden Boughton failed or refused to file his PREA complaint. But incarcerated persons are permitted to file complaints under the PREA under state law, not federal law. See Wis. Admin. Code §DOC 310.08. And the PREA "does not give prisoners a personal right to sue for an official's failure to comply with the Act's requirements.'" Gould v.

Doe, CaseNo. 20-cv-1250, 2021 WL 3056249, at *3 (E.D. Wis. July 20, 2021) (quoting Summers v. Waggoner, No. 19-CV-01338, 2020 WL 6321488, at *3 (S.D. Ill. Oct. 28, 2020), and citing other cases). The court will dismiss defendants Brown, Cirian and Boughton because the plaintiff has not stated a claim against them related to his PREA complaint.

The plaintiff next alleges that Sheryl Kinyon, Dr. Ribalt and Parr rendered inadequate medical treatment for his testicular pain by refusing to provide him Tramadol despite a specialist's recommendation and failed to properly treat his hernia. The court analyzes these allegations under the Eighth Amendment. Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019) (citing Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014)). To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (*en banc*). "The standard of deliberate indifference 'requires more than negligence or even gross negligence; a plaintiff must show that the defendant was essentially criminally reckless, that is, ignored a known risk.'" Stewart v. Wexford Health Sources, Inc., 14 F.4th 757, 763 (7th Cir. 2021) (quoting Huber v. Anderson, 909 F.3d 201, 208 (7th Cir. 2018)).

The plaintiff's allegations about his severe testicular pain satisfy the objective component of an Eighth Amendment claim. See Walker v. Benjamin, 293 F.3d 1030, 1040 (7th Cir. 2002). His allegations about his hernia also may satisfy the objective component. There are different kinds of hernia, and some do not require surgical intervention; those are known as reducible hernias, "which means that the hernia can be pushed back inside the body without difficulty." Johnson v. Doughty, 433 F.3d 1001, 1003 (7th Cir. 2006). But then

there is a non-reducible, "strangulated" hernia, which is "an emergency surgical situation in which the hernia is non-reducible and possibly gangrenous, i.e., causing abdominal tissue decay." Id. at 1004. The plaintiff does not say which kind of hernia he had. He says only that his hernia was inguinal, which means it was in his "groin area." Id. at 1003. But he also alleges that he was in severe pain from his hernia and that he underwent surgery and insertion of a mesh. The court will assume for purposes of this order that both the plaintiff's pain and his hernia were objectively serious medical conditions.

The court also finds that the plaintiff sufficiently alleges that Parr and Ribalt were aware of his hernia but failed to provide proper treatment. He says that on February 28, 2023, Parr and Ribault rejected Dr. Kramer's recommendation for Tramadol. Although they may have had legitimate medical reasons for doing so, the plaintiff does not say that he was given any other pain medication. He alleges that the next day, he again saw Parr about his hernia, but that she still did not provide him medication or any treatment. Although these allegations are slim, they are enough to suggest that Parr and Ribalt provided the plaintiff inadequate medical treatment for his testicular pain and hernia. The court will allow the plaintiff to proceed on this claim against Parr and Ribalt.

The court will not allow the plaintiff to proceed on this claim against Sheryl Kinyon because he does not allege that she was personally involved in the treatment of his testicular pain or hernia. See Alejo v. Heller, 328 F.3d 930, 936 (7th Cir. 2003) (explaining that to state a claim against the defendant under §1983, the plaintiff must allege how each defendant "personally participated in or caused the unconstitutional actions"). The plaintiff alleges only that he

spoke with Sheryl Kinyon about his no-kneel restriction, which she forwarded to Ribalt for approval, and that he later saw her about his ACL and lower back injuries. These allegations do not suggest that Sheryl Kinyon ever was aware of or indifferent to the plaintiff's testicular pain or hernia.

The plaintiff also alleges that Sheryl Kinyon, Dr. Ribalt and Parr provided inadequate treatment for his ACL and lower back injuries, including refusing the recommendation for a no-kneel restriction. But these allegations are unrelated to his allegations about the sexual assault that he says led to his hernia and inadequate treatment. The plaintiff does not allege that his ACL or back injuries arose out of the same incident or occurrence as his sexual assault or hernia or that they have anything to do with each other. The plaintiff cannot bring unrelated claims about treatment for his other medical ailments in the same case as his claims about his sexual assault and hernia treatment solely because some defendants are the same. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); Fed. R. Civ. P. 20(a)(1)(A); see also Wheeler v. Wexford Health Sources, Inc., 689 F.3d 680, 683 (7th Cir. 2012) ("A litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot."). The court will not allow the plaintiff to proceed in this case on his allegations about the treatment of his ACL and lower back injuries.

The plaintiff asserts that Dr. Kramer provided him inadequate care for his hernia by inserting a recalled mesh, refusing to remove the mesh later and cutting a nerve during his surgery. The allegations against Kramer likely state an Eighth Amendment claim given the severity of the plaintiff's injuries and Kramer's alleged disregard of the risk to his health by inserting and leaving the recalled or defective mesh. See Hoban v. Wexford Health Sources, Inc., 731 F. App'x 530, 532 (7th Cir. 2018) (citing Pyles, 771 F.3d at 412; Greeno v. Daley,

414 F.3d 645, 654–55 (7th Cir. 2005)). But this claim presents a different problem: The plaintiff alleges that Kramer works at Gundersen Boscobel, not WSPF. Gundersen Boscobel is a private hospital, and a plaintiff may bring a suit under §1983 only against *government* officials or employees or individuals who acted "under color of state law." Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 822 (7th Cir. 2009). A private party may act under color of state law only when the party "acted together with or . . . obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).

The court cannot determine from the complaint whether Kramer was a state actor when she treated the plaintiff. It is possible that WSPF contracted with Gundersen Boscobel to provide care for incarcerated persons. That might provide a basis for the court to conclude that Kramer was a state actor when she treated the plaintiff in February and March 2023. Although it is unclear from the complaint whether the court may consider Kramer a state actor for purposes of this lawsuit, the plaintiff "can[not] be charged fairly with knowing" whether Kramer rendered treatment pursuant to a contract between the hospital and WSPF, which could make her a state actor. See Rodriguez, 577 F.3d at 830. The court will assume for the purpose of screening only that Kramer was acting under color of state law when she treated the plaintiff and will allow the plaintiff to proceed on his claim against her. Nothing in this decision precludes Kramer from moving to dismiss this claim if she has evidence showing she was not a state actor when she treated the plaintiff.

But the plaintiff may not proceed on a claim against Gundersen Boscobel Hospital. A plaintiff may bring a claim under §1983 only against a *person* who

violates someone's federal rights. A hospital is not a "person," and is not subject to suit under §1983. See Clark v. Wisconsin, Case No. 22-CV-230, 2023 WL 355938, at *1 (W.D. Wis. Jan. 23, 2023) (citing Smith v. Knox Cnty. Jail, 666 F.3d 1037, 1040 (7th Cir. 2023)). The court will dismiss Gundersen Boscobel Hospital as a defendant.

The plaintiff also may not proceed on a claim against defendants Ray, Payne or Boyer. The amended complaint contains a single allegation against these defendants—that they failed to investigate the plaintiff's grievances. But incarcerated persons have no federal right to meaningful review of their grievances, including an investigation into their allegations. See Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996); Steinke v. Dittmann, Case No. 17-cv-656, 2020 WL 470145, at *3 (E.D. Wis. Jan. 29, 2020). The plaintiff cannot proceed on a claim against any complaint examiners for how they allegedly handled or mishandled his grievances. See Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011).

The court also will dismiss Katie Kinyon and Jamie Adams because the amended complaint contains no allegations against these persons. The plaintiff lists them as defendants but does not allege how they were personally involved in any alleged deprivation of his rights. When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim for relief that is plausible on its face." Twombly, 550 U.S. at 570.

Finally, the plaintiff seeks damages and injunctive relief ordering Gundersen Boscobel Hospital to remove his hernia mesh and ordering the DOC to provide him treatment for his back and ACL injuries. But the plaintiff has sued the defendants in their individual capacities only, and "section 1983 does not permit injunctive relief against state officials sued in their individual as

distinct from their official capacity." Greenawalt v. Ind. Dep't of Corr., 397 F.3d 587, 589 (7th Cir. 2005) (citing Luder v. Endicott, 253 F.3d 1020, 1024–25 (7th Cir. 2001)). Moreover, the court is not allowing the plaintiff to proceed on claims related to his back or ACL injuries. He may not seek injunctive relief that is unrelated to the claims asserted in the amended complaint. See Decker v. Fed. Bureau of Prisons, Case No. 22-2475, 2023 WL 2942455, at *1–*2 (7th Cir. Apr. 14, 2023) (citing Fed. R. Civ. P. 20(a)(2)(A), and George, 507 F.3d at 607.

To summarize, the plaintiff may proceed on the following claims: 1) an Eighth Amendment claim against Lieutenant Scullion and Officer Belz related to the sexual assault on December 2, 2022; 2) a First Amendment retaliation claim against Belz for failing to intervene in the sexual assault due to the plaintiff having filed a lawsuit; 3) an Eighth Amendment claim against Dr. Ribalt and Parr for inadequate treatment of his testicle pain and hernia only; and 4) an Eighth Amendment claim against Dr. Kramer for inadequate treatment of his hernia. He may proceed on these claims for damages only and may not seek injunctive relief. He may not proceed on any other claims or against any other defendants.

### III. Conclusion

The court **GRANTS** the plaintiff's first motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES AS UNNECESSARY** the plaintiff's second motion for leave to proceed without prepaying the filing fee. Dkt. No. 9.

The court **DISMISSES** defendants Gary Boughton, Jacob Cirian, Sheryl Kinyon, Katie Kinyon, Jamie Adams, Gundersen Boscobel Hospital, E. Ray, J. Payne and R. Boyer.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the amended complaint and this order to the Wisconsin Department of Justice for service on defendants Matthew Scullion, Correctional Officer Belz, Justin Ribalt, and Nicole Parr at WSPF. Under the informal service agreement, the court **ORDERS** those defendants to respond to the amended complaint within 60 days.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the amended complaint and this order on defendant Carrie Kramer at Gundersen Boscobel Hospital under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendant Carrie Kramer to file a responsive pleading to the amended complaint.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$348.40** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2).

The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Waupun Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the

---

[2] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 10th day of July, 2025.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**