JEFF POFF,

                    Plaintiff,

        v.                                          Case No. 25-cv-112-pp

MATTHEW SCULLION, *et al.*,
                    Defendants.

**ORDER GRANTING STATE DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT ON EXHAUSTION GROUNDS (DKT. NO. 28),
GRANTING DEFENDANT KRAMER'S MOTION FOR SUMMARY JUDGMENT
ON EXHAUSTION GROUNDS (DKT. NO. 34), DENYING PLAINTIFF'S
MOTION FOR SPOLIATION AND SANCTIONS (DKT. NO. 68), GRANTING
PLAINTIFF'S MOTION TO WITHDRAW CARRIE KRAMER AS PARTY
(DKT. NO. 71) AND SETTING NEW CASE DEADLINES**

In January 2025, plaintiff Jeff Poff, who is incarcerated at Waupun Correctional Institution and is representing himself, filed this case alleging violations of his constitutional rights when he was confined at the Wisconsin Secure Program Facility. The court screened the amended complaint and allowed the plaintiff to proceed on the following claims: (1) Eighth Amendment claims against Lieutenant Scullion and Officer Belz related to the alleged sexual assault on December 2, 2022; (2) a First Amendment retaliation claim against Belz for failing to intervene in the sexual assault due to the plaintiff having filed a lawsuit; (3) an Eighth Amendment claim against Dr. Ribalt and Parr for inadequate treatment of his testicle pain and hernia; and (4) an Eighth Amendment claim against Dr. Kramer for inadequate treatment of the plaintiff's hernia. Dkt. No. 11 at 16. This order grants defendants Belz, Parr, Ribalt and Scullion's (State Defendants) motion for partial summary judgment on exhaustion grounds as to the plaintiff's retaliation claim against Belz, dkt.

1

no. 28, grants defendant Kramer's motion for summary judgment on exhaustion grounds, dkt. no. 34, denies the plaintiff's motions for spoliation of evidence and sanctions, dkt. no. 68, and grants the plaintiff's motion to withdraw defendant Kramer as a party, dkt. no. 71.

On June 26, 2026, the court received from the plaintiff a motion for change of venue. Dkt. No. 76. Under Civil Local Rule 7(b), the defendants have twenty-one days (until July 17, 2026) to file a brief in opposition, and if they do, the plaintiff has fourteen days (until July 31, 2026) to file a reply. The court will rule on that motion once it has been fully briefed.

## I. Defendant Kramer's Motion for Summary Judgment on Exhaustion Grounds (Dkt. No. 34) and Plaintiff's Motion to Withdraw Kramer from Lawsuit (Dkt. No. 71)

On May 15, 2026, the plaintiff filed a motion to withdraw Dr. Kramer from this lawsuit; the plaintiff states that he determined he did not exhaust his administrative remedies as to his claim against Kramer. Dkt. No. 71. The court will grant the plaintiff's motion. Because the plaintiff concedes that he did not exhaust his claim against Kramer, the court will grant Kramer's motion for summary judgment on exhaustion grounds. Dkt. No. 34.

## II. State Defendants' Motion for Partial Summary Judgment on Exhaustion Grounds (Dkt. No. 28)

### A. Facts

The plaintiff submitted two grievances that mention the December 2, 2022 pat search: WSPF-2022-19195 and WSPF-2023-1163. Dkt. No. 30 at ¶1. Neither grievance alleges facts that put prison officials on notice that the pat search was provoked by the fact that the plaintiff had filed lawsuits. Id. at ¶2.

In WSPF-2022-19195, the plaintiff complained that on December 2, 2022, Scullion hit the plaintiff in his testicles during a pat search. Id. at ¶3. The plaintiff's grievance stated that Belz was present and did not have his body

2

camera on. Id. at ¶4. Nowhere in that grievance or the appeal for WSPF-2022-19195 did the plaintiff state that the fact that he had filed lawsuits was what provoked the search. Id. at ¶5. Notably, neither the plaintiff's grievance nor his appeal contain the statement in his complaint that Belz "loudly stated (That's what you [n-word] (sic) for filing lawsuits against us)." Id. at ¶6.

In WSPF-2023-1163, the plaintiff stated that Scullion came to his cell in January 2023 and told the plaintiff that Scullion had spoken to the judge in the plaintiff's criminal case and that she was never going to respond to the plaintiff's correspondence. Id. at ¶7. The plaintiff's grievance references the December 2, 2022 pat search, which the plaintiff described as a sexual assault by Scullion. Id. at ¶8. Nowhere in the grievance for WSPF-2023-1163 did the plaintiff state that filing lawsuits was what had provoked the search. Id. at ¶9. Again, the plaintiff's grievance does not contain the statement he described in his complaint—that Belz "loudly stated (That's what you [n-word] (sic) for filing lawsuits against us)." Id. at ¶10.

B.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

C.    Discussion

The State Defendants contend that the plaintiff did not exhaust his administrative remedies regarding his retaliation claim against Belz.[1] Dkt. No. 29 at 1. They contend that the court should find that the plaintiff failed to exhaust his retaliation claim because he did not file a grievance that put prison officials on notice that he was alleging that his protected activity—filing lawsuits—provoked the December 2, 2022 pat search. Id. at 2. The State Defendants assert that although the plaintiff filed two grievances related to the search, neither grievance alleges facts that put prison officials on notice that the plaintiff filing lawsuits provoked the search. Id. at 4-5.

The plaintiff responds that he filed multiple grievances regarding his claims in this case including his retaliation claim. Dkt. No. 53 at 8. He states

---

[1] The State Defendants do not move for summary judgment as to the plaintiff's Eighth Amendment assault claim against Scullion and Belz, or as to his Eighth Amendment medical care claim against Ribault and Parr. Dkt. No. 29 at 1.

that he complained about retaliation by "Defendants Scullion, Belz, Parr, and/or Ribault, including threats, punitive housing reassignment, and property confiscation after filing grievances about the assault and medical care. [Status: Staff refused to accept form; staff member told Plaintiff "you better watch out snitching on staff."]" Id. The plaintiff's response is not verified. He cites a declaration and exhibit supporting his assertions, but he did not file a declaration or any exhibits in support of his summary judgment response.

The plaintiff also appears to assert that grievance forms may not have been available to him. He states that between December 2, 2022 and May 2023, when he requested complaint forms from unit staff, his requests were denied or ignored, or the forms were not provided for days or weeks, causing statutory fourteen-day filing deadlines to lapse. Id. at 10. Again, the plaintiff cites his declaration, but he did not file one.

The plaintiff contends that the central factual disputes concerning exhaustion—whether prison officials destroyed his grievances, whether they threatened and retaliated against him for filing grievances and whether they deliberately obstructed his access to the grievance process—are the same factual disputes that comprise the merits of his First Amendment retaliation claim. Id. at 11. He asserts that disputed facts are intertwined with the merits of his claims and must be resolved by a jury under the Supreme Court's holding in Perttu v. Richards, 605 U.S. 460 (2025). Id. at 20-24.

The plaintiff contends that he submitted a grievance related to his retaliation claim against Belz. Id. at 14. He again cites a declaration and exhibits that he did not file. Id. at 14-15. Alternatively, the plaintiff contends that prison officials rendered the grievance process unavailable. Id. at 16. The plaintiff states that staff refused to accept grievance forms about retaliation,

telling him that he had filed enough complaints already. Id. He says that he was denied forms he needed to submit grievances. Id. The plaintiff asserts that when he filed grievances about staff misconduct, staff members threatened him and told him to watch out snitching on staff. Id. at 17. The plaintiff states that the pattern of obstruction, retaliation and destruction rendered the grievance process unavailable. Id. at 18.

The plaintiff contends that spoliation of evidence precludes summary judgment for the defendants. Id. at 18. Specifically, he states that the disappearance of surveillance video of the incident and his "comprehensive grievance naming all defendants" shows bad faith and precludes summary judgment in the defendants' favor. Id. at 19-20.

The State Defendants reply that the court should grant their motion because the plaintiff's response brief fails to develop a coherent argument and is not supported by admissible evidence. Dkt. No. 55 at 1.

The Prison Litigation Reform Act (PLRA) states that an incarcerated individual cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); see also Woodford v. Ngo, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires that an incarcerated person comply with the rules applicable to the grievance process at his institution. Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The objective of §1997e(a) is to permit the institution's "administrative process to run its course before litigation begins." Dole v. Chandler, 438 F.3d

804, 809 (7th Cir. 2006) (quoting <u>Cannon v. Washington</u>, 418 F.3d 714, 719 (7th Cir. 2005)); <u>see also</u> <u>Kaba v. Stepp</u>, 458 F.3d 678, 684 (7th Cir. 2006). The Seventh Circuit applies a "strict compliance approach to exhaustion" and expects incarcerated individuals to adhere to "the specific procedures and deadlines" established by the institution's policy. <u>Dole</u>, 438 F.3d at 809; <u>see also</u> <u>Hernandez v. Dart</u>, 814 F.3d 836, 842 (7th Cir. 2016) (citations omitted). Because exhaustion is an affirmative defense, the defendants bear the burden of proving that the plaintiff failed to exhaust. <u>Pavey v. Conley</u>, 544 F.3d 739, 740-41 (7th Cir. 2008) (citing <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007)).

The Inmate Complaint Review System (ICRS) within the Wisconsin prisons is the administrative remedy available to incarcerated individuals with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code §DOC 310.01(2)(a). Before an incarcerated person may commence a civil action, he must exhaust all administrative remedies that the Department of Corrections has promulgated by rule. Wis. Admin. Code §DOC 310.05. The ICRS is available for incarcerated individuals to "raise issues regarding policies, living conditions, or employee actions that personally affect the inmate or institution environment." Wis. Admin. Code §DOC 310.06(1).

To use the ICRS, an incarcerated person must file a complaint with the institution complaint examiner (ICE) within fourteen days after the occurrence giving rise to the complaint. Wis. Admin. Code §DOC 310.07(2). Complaints submitted later than fourteen days after the event may be accepted for good cause. <u>Id.</u> The ICE shall accept, return or reject a complaint. Wis. Admin. Code §DOC 310.10(2). After reviewing and acknowledging each complaint in writing, the ICE either rejects the complaint or sends a recommendation to the "appropriate reviewing authority," who may recommend that the complaint be

7

affirmed or dismissed in whole or in part. Wis. Admin. Code §§DOC 310.10(9) & 310.10(12). Within fourteen days after the date of the decision, an incarcerated individual may appeal the reviewing authority decision to the corrections complaint examiner (CCE). Wis. Admin. Code §DOC 310.09(1). The CCE reviews the appeal and makes a recommendation to the secretary of the Department of Corrections. Wis. Admin. Code §DOC 310.12(9). The secretary shall affirm or dismiss the CCE's recommendation, or return the appeal to the CCE for further investigation. Wis. Admin. Code §DOC 310.13(2).

The plaintiff's summary judgment response does not include a response to the defendants' proposed findings of fact. The Local Rules require that a party opposing summary judgment must file a concise response to the moving party's statement of facts that contains the moving party's proposed findings of fact followed by a response that includes, in the case of any disagreement, references to supporting materials. Civil Local Rule 56(b)(2)(B) (E.D. Wis.). The defendants advised the plaintiff of this rule when they filed their motion for summary judgment. The court could deem all of defendants' proposed findings of fact undisputed based on plaintiff's failure to strictly follow Civil L.R. 56(b)(2)(B). See Civil. L.R. 56(b)(4); Robinson v. Waterman, 1 F.4th 480, 483 (7th Cir. 2021) (A district court may "permissibly appl[y] Local Rule 56(b)(4) to deem [a movant's] facts unopposed, regardless of [a non-movant's] later filings."). But district courts are entitled to construe *pro se* submissions leniently and may overlook plaintiff's noncompliance by construing the limited evidence in a light most favorable to plaintiff. See Grady v. Hardy, 826 F.3d 1000, 1005 (7th Cir. 2016). The plaintiff's summary judgment response contains unsupported assertions that he submitted a grievance regarding his retaliation claim against Belz or, alternatively, that he was prevented from

8

submitting one. These statements are inadmissible because they are not supported by testimony or other evidence. See Fed. R. Civ. P. 56(c)(1).

The plaintiff's retaliation claim against Belz is based on allegations that after Scullion hit the plaintiff's testicles during a pat search on December 2, 2022, Belz "loudly stated (That's what you [n-word] (sic) for filing lawsuit against us." Dkt. No. 29 at 1-2 (citing Dkt. No. 8 at 5 ¶19). It is undisputed that the plaintiff submitted two grievances related to his claims against the State Defendants, WSPF-2022-19195 and WSPF-2022-1163. It also is undisputed that neither grievance alleges facts that put prison officials on notice that the plaintiff alleged that his filing of lawsuits was what provoked the pat search.

The plaintiff's response contains an unsupported, conclusory assertion that prison officials rendered the ICRS grievance system unavailable to him by destroying grievances or refusing to acknowledge them. Dkt. No. 53 at 16-18. But the undisputed evidence shows that the grievance system *was* available to the plaintiff. In addition to exhausting complaint WSPF-2022-19195 regarding Scullion's alleged inappropriate pat search, the plaintiff's Inmate Complaint History Report shows that between December 5, 2022 and December 5, 2023, he filed fifty acknowledged grievances, twenty-three of which were exhausted. Dkt. No. 31-1 at 10-12. Contrary to the plaintiff's unsupported assertions, the undisputed facts show that the ICRS was available to the plaintiff.

The undisputed facts show that the plaintiff did not exhaust his administrative remedies regarding a retaliation claim against Belz. But even if there was a factual dispute over whether the plaintiff exhausted administrative remedies as to his retaliation claim against Belz, he would not be entitled to a jury trial to resolve that dispute. The State Defendants concede that the

plaintiff exhausted administrative remedies regarding his Eighth Amendment claims against Scullion and Belz based on the December 2, 2022 pat search and his Eighth Amendment medical care claim against Ribalt and Parr. The plaintiff's retaliation claim is based on allegations that Belz failed to intervene in Scullion's pat search in retaliation for *prior lawsuits* the plaintiff filed. Any factual dispute over whether the plaintiff exhausted his claim against Belz would not be related to the merits of the plaintiff's retaliation claim against Belz. Cf. Perttu v. Richards, 605 U.S. 460, 464 (2025) (holding that parties are entitled to a judge trial on PLRA exhaustion when exhaustion is intertwined with merits of claim protected by the Seventh Amendment).

"The PLRA exhaustion requirement ensures that 'a prison has received notice of, and an opportunity to correct, a problem' before being drawn into litigation." Jackson v. Esser, 105 F.4th 948, 958-59 (7th Cir. 2024) (quoting Turley v. Rednour, 729 F.3d 645, 650 (7th Cir. 2013)). If an incarcerated individual has taken all the administrative steps, his "complaint will suffice for exhaustion purposes if it provides notice to the prison of 'the nature of the wrong for which redress is sought.'" Id. at 959 (quoting Schillinger v. Kiley, 954 F.3d 90, 995 (7th Cir. 2020)). The plaintiff's failure to submit a grievance in which he raised the issue of Belz's alleged retaliation means that the plaintiff did not exhaust administrative remedies as to that claim. The court will grant the State Defendants' motion for partial summary judgment on exhaustion grounds, and it will dismiss without prejudice the plaintiff's retaliation claim against Belz. See Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004).

The following claims remain: (1) Eighth Amendment claims against Lieutenant Scullion and Officer Belz related to the sexual assault on December 2, 2022, and (2) Eighth Amendment claims against Dr. Ribalt and Parr for

inadequate treatment of the plaintiff's testicle pain and hernia. At the end of this decision, the court will set new deadlines for the parties to complete discovery and file motions for summary judgment on the merits.

### III.     Plaintiff's Motion for Spoliation and Sanctions (Dkt. No. 68)

The plaintiff filed a motion for spoliation of evidence and sanctions in which he asserts that the defendants failed to provide discovery and/or purposefully destroyed video footage of Scullion's search of him on December 2, 2022. Dkt. No. 68. He alleges that Scullion and Belz had their body cameras turned off during the incident, in violation of DOC policy. Id. at 1. The plaintiff states that the day after the incident, he submitted a request to the security director to retain "corner video of cells 419-420 Approx 10:20 AM-10:30AM 12/2/22 Incident[.]" Id. The security director allegedly responded that the video would be retained if available, and he added that Scullion "did not assault you, I've reviewed the video, and he clearly conduct[ed] an appropriate pat search[.]" Id. The plaintiff states that in January 2026, he received discovery from the defendants; upon review of the video he found that it was blank. Id. at 2. He requests an evidentiary hearing to determine what happened to the video and/or that the court sanction the defendants $1,000 from the day the plaintiff first requested the video until they produce it. Id. at 4.

The defendants respond that the court should deny the plaintiff's motion because they do not play a role in video preservation and because there is no evidence that DOC officers acted in bad faith. Dkt. No. 72 at 8. The defendants submitted two declarations in support of their response; the declarations establish that the video footage from the incident inadvertently was not saved and that the defendants were not involved in video preservation.

Video footage from Wisconsin Secure Program Facility (WSPF) security cameras is saved in a computer system for 120 days before it is automatically overwritten. Dkt. No. 74 at ¶5. During the 120-day period, incarcerated individuals can request that video be preserved for litigation by submitting a written request to the security director. Id. at ¶¶6-7. Once approved by the security director, the request is forwarded to the video litigation preservation supervisor who downloads and preserves the video. Id. at ¶9. In December 2022, the security director at WSPF was Jacob Cirian and the video preservation supervisor was Lt. Joshua Kolbo. Dkt. No. 73 at ¶3; Dkt. No. 74 at ¶3.

On December 8, 2022, Security Director Cirian reviewed a request from the plaintiff that said, "I need the corner video for cells (A) 419-420 approx 10:20 am -10:30 am on 12/2/22 when Lt. Scullion and CO II Belz came to get me to go on Hospital trip for possible future 1983 civil litigation and outside assault charges[.]" Dkt. No. 73 at ¶9. The plaintiff's request included a letter describing his allegation that Scullion had assaulted him by purposely hitting his testicles twice. Id. Because the plaintiff had alleged he was assaulted by staff, Cirian viewed the video while he was processing the plaintiff's request. Id. at ¶10. After watching the video, Cirian responded to the plaintiff, "video will be retained if available. Additionally, Lt. Scullion did not 'assault' you. I have reviewed the video and he clearly conduct (sic) an appropriate pat search." Id. at ¶13. "Video will be retained if available" was a standard statement Cirian made when responding to video preservation requests because he did not always watch video before forwarding the request to Lt. Kolbo for preservation. Id. at ¶14.

After watching the video, Cirian emailed Lt. Kolbo and directed him to preserve "419-420 vestibule video from 12/2/22 from 10:20-10:30am," which is exactly what the plaintiff asked for. Id. at ¶12. Cirian knows how to watch videos from the security system, but he is not sure he knows how to save video so that it is not overwritten; he always delegated to Lt. Kolbo or other staff the physical task of preserving video. Id. at ¶11. Cirian believed his email to Kolbo would preserve video of the pat search he watched. Id. at ¶12.

Lieutenant Kolbo preserved the video the plaintiff had requested. Dkt. No. 74 at ¶11. Nothing happens in the video; it is ten minutes of video of a hallway outside cell doors and does not show any individuals. Id. Presumably, the pat search occurred slightly outside the ten-minute period the plaintiff requested. Dkt. No. 72 at 4.

Because the plaintiff alleged that staff assaulted him by hitting his testicles, Cirian created a record reporting that the plaintiff had made a Prison Rape Elimination Act (PREA) complaint against Scullion. Dkt. No. 73 at ¶15. Cirian also was WSPF's PREA Compliance Officer and documented that the plaintiff's allegation was "Non-PREA." Id. He noted, "the contact made was related to the official duties as it was a pat search" and "[t]he pat search was conducted appropriately in accordance to the DOC Procedures." Id. He also documented, "on 12/08/22, SD Cirian reviewed video footage of alleged incident. Video has been retained." Id. Cirian said that "video has been retained" because he believed his email to Lt. Kolbo had preserved the video he watched showing the pat search. Id. at ¶16.

On December 10, 2022, Lt. Kolbo emailed Cirian stating, "requested video placed in DVR Litigation folder. It does not show any interaction between inmate Poff any anyone else for the time frame." Id. at ¶17. Cirian did not

respond to this email, does not recall reading the statement that the video did not show the pat search and believes he never read this statement. Id. at ¶19. If Cirian had been aware that the preserved video did not show the pat search, he would have followed up with Lt. Kolbo and asked him to preserve video of the pat search. Id.

Neither defendant Scullion nor defendant Belz were involved in the preservation of the video of the December 2, 2022, pat search. Id. at ¶21; Dkt. No. 74 at ¶12.

Federal Rule of Civil Procedure 37(e)(2)(A) provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court . . . only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may . . . presume that the lost information was unfavorable to the party.

Fed. R. Civ. P. 37(e)(2)(A) (emphases added). The "destruction of or inability to produce [evidence], standing alone, does not warrant an inference that the [evidence], if produced, would have contained information adverse to the [defendant's] case." Trover v. Oglesby, Case No. 24-1733, 2026 WL 457254, at **4-5 (7th Cir. Feb. 18, 2026) (quoting Park v. City of Chicago, 297 F.3d 606, 615 (7th Cir. 2002)). "The crucial element is not that the evidence was destroyed but rather the reason for the destruction." Id. (quoting S.C. Johnson & Son, Inc. v. Louisville & Nashville R.R. Co., 695 F.2d 253, 258 (7th Cir. 1982)). As the movant, the plaintiff bears the burden of establishing that a defendant acted in bad faith, which requires destruction "for the purpose of hiding adverse information." Id. (quoting Bracey v. Grondin, 712 F.3d 1012, 1019 (7th Cir. 2013) (internal quotation marks omitted)).

The plaintiff has not submitted evidence that the defendants had any involvement in the failure to preserve the video. The plaintiff also has not submitted evidence that Cirian and Kolbo's failure to preserve video footage of the incident was done in bad faith. The evidence shows that although Cirian directed that video be retained, it most likely was not preserved because Kolbo preserved the specific time frame that the plaintiff requested and the incident most likely occurred outside of the time frame. The plaintiff is not entitled to sanctions. The court will deny his motion.

**IV. Conclusion**

The court **GRANTS** the State Defendants' motion for partial summary judgment for failure to exhaust administrative remedies. Dkt. No. 28. The court **ORDERS** that the plaintiff's retaliation claim against Belz is **DISMISSED WITHOUT PREJUDICE**.

The court **GRANTS** defendant Kramer's motion for summary judgment on exhaustion grounds. Dkt. No. 34. The court **GRANTS** the plaintiff's motion to withdraw Kramer. Dkt. No. 71. The court **ORDERS** that the plaintiff's Eighth Amendment claim against Kramer is **DISMISSED WITHOUT PREJUDICE** and defendant Kramer is **DISMISSED** from this lawsuit.

The court **DENIES** the plaintiff's motions for spoliation and sanctions. Dkt. No. 68.

The court **ORDERS** that the deadline for the parties to complete discovery is **October 9, 2026** and the deadline for the parties to file motions for summary judgment on the merits of the plaintiff's remaining claims is **November 13, 2026**. The plaintiff's remaining claims are: (1) Eighth Amendment claims against Lieutenant Scullion and Officer Belz related to the sexual assault on December 2, 2022, and (2) Eighth Amendment claims

15

against Dr. Ribalt and Parr for inadequate treatment of his testicle pain and hernia.

Dated in Milwaukee, Wisconsin this 9th day of July, 2026.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**

16